KLEIN, Respondent, vs. BARRY, Receiver, and another, Appellants, and RAILROAD COMMISSION OF WISCONSIN, interpleaded defendant.

*November 16—December 11, 1923.*

*Constitutional law: Sale of securities: Blue Sky Law: Conferring legislative and judicial power on railroad commission.*

Sec. 1753—57, Stats., as amended by ch. 442 of the Laws of 1921,—which provides (1) that every sale of a security issued in violation of or in noncompliance with secs. 1753—48 to 1753—68 (the Blue Sky Law), or with the authorization of the commission but not in conformity with the representations made to the commission or with its requirements, shall be voidable at the discretion of the commission; (2) that if upon investigation the commission shall make certain findings, it may by an award require the company or broker who committed any of the foregoing acts to pay such amounts as shall be necessary to place the state, company, or purchaser in the same situation that it or they would have been had the law and the permit been complied with; (3) that if the commission finds that the violation was not done in good faith, etc., it may give the purchaser the right to declare the transaction voidable or may make such award as may be just and equitable; (4) that the orders of the commission were to be reviewed as are "other orders of the commission,"—is void because it attempts to confer on the railroad commission, an administrative body, both legislative and judicial power, in violation of the constitution.   p. 274.

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

*Arthur C. Klein* obtained a judgment against the *Oshkosh Tractor Company,* execution was issued thereon, and the same was returned unsatisfied. *Klein* then began an action under sec. 3216, Stats., to sequestrate the property of the *Oshkosh Tractor Company* and to appoint a receiver in that action. An interlocutory judgment was entered November 17, 1922, sequestering the property of the *Oshkosh Tractor Company* and appointing *Alma Barry* receiver.

Thereafter, on December 16, 1922, *George E. Williams,* representing some 200 persons who had theretofore subscribed for the capital stock of the *Oshkosh Tractor Company,* applied to the circuit court for Milwaukee county for an order, which application was granted, requiring *Alma Barry,* the receiver, to show cause why the interlocutory judgment of November 17, 1922, should not be modified and the receiver restrained from prosecuting any action against any of the stockholders of the *Oshkosh Tractor Company* until the further order of the court. The petition upon which the order requiring the receiver to show cause was granted set forth that on the 4th day of May, 1922, the petitioner, on behalf of the subscribing stockholders, made application to the *Railroad Commission* for an investigation by the *Commission* as to whether the permit to sell stock obtained by the *Oshkosh Tractor Company* was in violation of the provisions of ch. 442 of the Laws of 1921, being an amendment to certain sections therein enumerated of the act commonly denominated the Blue Sky Law (being secs. 1753—48 to 1753—68, inclusive, Stats.).

Among other things it was alleged in the petition that in the application made for a permit to sell capital stock of said *Oshkosh Tractor Company* it was stated that at that time the outstanding capital stock consisted of 4,000 shares of preferred stock of the par value of $100; that in truth and in fact there was at that time no outstanding preferred stock of the *Oshkosh Tractor Company,* and that except for 2,500 shares of said preferred stock to be issued to the La Crosse Tractor Company as part of the purchase price of the business and certain of the assets of the La Crosse Tractor Company, which stock was issued on the 21st day of July, 1921, there was none other of the preferred stock of said *Oshkosh Tractor Company* outstanding at the time said application was made; that said false representation was made to the *Commission* for the purpose of misleading

the *Commission* and obtaining the permit for the sale of the
capital stock of said *Oshkosh Tractor Company*.

There were likewise allegations as to other and further
false representations in the application of the *Oshkosh
Tractor Company* to the *Railroad Commission* for the
permit to sell stock relating to the net profits of the La
Crosse Tractor Company; that, in violation of the allega-
tions of the permit, preferred shares of the company were
issued for promotion purposes; that certain shares were
issued without any consideration; that many subscribers to
the capital stock were secured by means of false and fraud-
ulent representations; and other matters of the same gen-
eral tenor. It appears that upon the petition of *George E.
Williams* the *Railroad Commission* issued an order for a
hearing to be held on the 23d day of May, 1922.

On the 3d day of January, 1923, there was a hearing
in the circuit court for Milwaukee county upon the mo-
tion to modify the interlocutory judgment, and it was
modified, and the *Railroad Commission* was brought in
and made a party defendant to the action. It was provided
that nothing in the interlocutory order or judgment should
be taken or construed to prevent the *Railroad Commission*
from continuing with its hearing then pending upon the
petition of *George E. Williams*. It was also provided that
nothing contained in the order should be so construed as
to prevent the receiver from making demand upon any of
the subscribers to stock of said *Oshkosh Tractor Company*
and receiving payment therefor. The receiver was enjoined
from starting or prosecuting any action against any stock-
holder of the *Oshkosh Tractor Company* until further
order of the court. Thereupon the receiver petitioned the
court for an order requiring the *Railroad Commission* to
show cause why an injunction should not issue from the
circuit court perpetually enjoining and restraining the
*Railroad Commission* from proceeding any further in the

hearing upon the petition of *George E. Williams* "with respect to the obtaining of subscriptions to stock in the said *Oshkosh Tractor Company,* and from making any adjudication, decision, order, or determination therein, and from making any other order, determination, finding, or decision which affects or determines, or purports to affect or determine, the validity or enforceability of any contract or alleged contract or subscription or alleged subscription to take stock in said *Oshkosh Tractor Company;* and why an order should not be made and entered requiring the said *Railroad Commission of Wisconsin* to turn over and deliver to the said *Alma Barry,* as said receiver of said corporation, all of the books, papers, records, contracts, and other documents now in the possession of and held by said *Railroad Commission of Wisconsin,* as evidence in said hearing."

The petition upon which the order to show cause was issued set up that the proceeding then being conducted by the *Railroad Commission* upon the petition of *George E. Williams* purported to be authorized and provided for by secs. 1753—48 to 1753—68, inclusive, of the Statutes, being ch. 674 of the Laws of 1919, as modified by ch. 442 of the Laws of 1921.  It was further alleged:

"That the said provisions of law pursuant to and under the authority of which the said *Railroad Commission of Wisconsin* is acting . . . are void and of no effect in that same are violative of and are in conflict with the provisions of the constitution of the state of Wisconsin hereinafter enumerated, in that:

"(a)  The terms and provisions of the said statutes are vague and indefinite and incapable of enforcement, particularly the provisions of sec. 1753—57 thereof:

"(b)  They deny to said corporation and the creditors thereof the equal protection of the law. . . .

"(c)  They deny to the said corporation its constitutional right to carry on its business in a lawful manner.

"(d)  They deprive the said corporation and the creditors thereof of the right of contract.

"(e) The powers given in and by said statutes to the said *Railroad Commission of Wisconsin* are and constitute a delegation of the judicial function to a body other than a duly constituted and authorized court.

"(f) The powers given in and by said statutes to the said *Railroad Commission of Wisconsin* are and constitute a delegation of legislative power to other than the senate and assembly of the state of Wisconsin.

"(g) Said statutes are unreasonable, arbitrary, oppressive, and discriminatory, and are in restraint of trade."

The particular provisions of the constitution alleged to have been violated are set out in detail, and it is also alleged that the statutes violate sec. 10 of art. I of the constitution of the United States relating to *ex post facto* laws; that they are in violation of "sec. 1 of the Fourteenth amendment to the said constitution of the United States, providing that no state shall deprive any person of life, liberty, or property without due process of law, or deprive any person within its jurisdiction of the equal protection of the laws; and that they violate sec. 4 of art. IV of said constitution of the United States, guaranteeing to every state a republican form of government."

There was also set out in accompanying affidavits in considerable detail the nature of the proceedings then pending before the *Railroad Commission* upon the petition of *George E. Williams,* which will be referred to in the opinion.

The order to show cause issued upon the petition of the receiver and the order to show cause upon the petition of *George E. Williams* were heard together, and the circuit court made an order which is the order appealed from in this case. The circuit court ordered that the motion of *George E. Williams* for a temporary injunctional order, restraining the receiver from commencing or proceeding in any action against any stockholder or subscriber to the capital stock of the *Oshkosh Tractor Company,* be denied and the receiver authorized to commence action; that the

receiver's motion to enjoin the *Railroad Commission* from proceeding farther in its hearing and making its order and decision upon the petition of *George E. Williams* should be denied and the previous order be vacated and set aside; that the receiver's motion for an order requiring the *Railroad Commission* to turn over and deliver to the receiver all books, papers, records, and other documents be denied; and there was a general order modifying all previous orders not in conformity with the order of July 30, 1923. The receiver of the *Oshkosh Tractor Company* and the *Oshkosh Tractor Company* both appeal from that part of the order entered July 30, 1923, denying the motion of the receiver to enjoin the *Railroad Commission* from proceeding further in its hearing and making any order or decision in the matter pending before it affecting or determining, or purporting to affect or determine, the validity or enforceability of any contract or subscription for stock in the *Oshkosh Tractor Company;* and from that part of the order which vacated and set aside the temporary injunction granted the receiver on the 5th day of January, 1923; and also from that part of the order of July 30, 1923, which denied the receiver's motion for an order requiring the *Railroad Commission* to turn over to the receiver the books, records, documents, etc., relating to the *Oshkosh Tractor Company.*

*Walter Drew* of Milwaukee, for the appellant *Barry.*

For the appellant *Oshkosh Tractor Company* there were briefs by *Bottum, Hudnall, Lecher & McNamara* of Milwaukee, and oral argument by *Geo. B. Hudnall.*

For the defendant *Railroad Commission* there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *Emmert L. Wingert* of Madison, and *Robert M. Rieser,* deputy attorney general, and oral argument by *Mr. Rieser.*

Klein v. Barry, 182 Wis. 255.

A brief was also filed by *Williams & Williams* of Oshkosh, as *amici curiæ,* and oral argument by *George L. Williams* of Oshkosh and *T. H. Sanderson* of Portage.

ROSENBERRY, J. We have not set out nor referred to all of the matters appearing in the record, but have set forth enough to present fairly the questions raised upon this appeal.

It is argued by Messrs. Williams & Williams, *amici curiæ,* that, independently of the provisions of sec. 1753—57 of the Statutes of 1921, the investigation by the *Railroad Commission* may proceed under other provisions of the act and that therefore the injunction was properly denied. A consideration of the whole record convinces us that, whatever the *Railroad Commission* might have done, it was in fact proceeding exclusively under the provisions of sec. 1753—57 as amended by the Laws of 1921; that that was the issue presented to the circuit court and is the question fairly presented by the record to this court. Such being the case, we are not disposed to undertake to spell out of the statute authority for some minor proceeding which may be authorized by the statute. It is quite clear that in this case the *Railroad Commission* was proceeding under the provisions of the section referred to, to hear, try, and determine all questions presented by the petition and was proceeding to enter its order ascertaining the facts, fixing and determining the rights of the parties so far as it might under the provisions of that section. We think that the question of the constitutionality of that section is squarely presented and it was the desire of all parties to the record upon the oral argument that the issues so presented should be determined.

Ch. 674 of the Laws of 1919 is an act relating to the prevention of fraud in the issuance, sale, and disposition

of stocks, bonds, and other securities.    Twenty-one new
sections were added to the statutes and became secs.
1753—48 to 1753—68, inclusive.    This enactment, which
contained the provisions ordinarily found in the so-called
Blue Sky Laws, provides that corporate securities shall not
be issued or sold without first securing a permit therefor;
provides that every person selling corporate securities to
the public shall be licensed as a broker; and imposes upon
the *Railroad Commission* the duty of making orders pro-
vided for in the act and of conducting investigations, and
generally gave to the *Commission* broad powers in the
matter of the authorization and sale of corporate securities.
    Sec. 1753—57, Stats. 1919, provided:

"The sale of every security issued by any company with-
out a permit of the commission authorizing the same then
in effect, shall be void, and the sale of every security issued
by any company with the authorization of the commission,
but not in conformity with the provisions, if any, which are
required by the commission, shall be void."

Sec. 1753—56 provides that orders of the *Commission*
under the act should be subject to review in the same manner
as other orders of the *Railroad Commission,* except that
paragraphs (b) and (c) of sec. 1797—16 shall not apply
to such appeal.    The section referred to does not give a
right of appeal, but authorizes the commencement of an ac-
tion in the circuit court for Dane county to review the
orders of the *Commission* and prescribe the procedure
therein.

We do not set out in detail that portion of the act relat-
ing to the issue of corporate securities and of permits to
brokers for the reason that the provisions of the law in
that respect are not in any way brought in question in this
action.    The proceeding being conducted by the *Railroad
Commission* which the receiver sought to have enjoined
related entirely to powers exercised by the *Commission*
under the amendment of 1921.    Neither the *Oshkosh*

Klein v. Barry, 182 Wis. 255.

*Tractor Company* nor any one else was seeking permission to issue securities of the *Oshkosh Tractor Company* or to advertise them or to do anything else relating to the sale and disposition thereof. As a matter of fact, it appears that an attempt had been made to dissolve the *Oshkosh Tractor Company* and that company was in process of liquidation. So far, therefore, as the constitutionality of the act as a whole is challenged, we shall defer determination thereof until such time as the question is properly presented. The legislature of 1921, by the enactment of ch. 442, amended sec. 1753—57. By reason of its length, we set out the section as amended in the margin.[1]

[1] Section 1753—57. The sale of every security in violation of, or in noncompliance with, sections 1753—48 to 1753—68 of the statutes and the sale of every security with the authorization of the commission, but not in conformity with the representations made to the commission for the purpose of obtaining the permit, or with the provisions, if any, which are required by the commission, shall be voidable at the discretion of the commission. If after investigation of any such alleged acts, it shall appear to the commission, and the commission shall find, that such acts were done in good faith, and not for the purpose of evading the law or misleading the commission, or with intent to violate the provisions of the permit, or constitute a mere irregularity, and that the injury, if any, may be remedied, it shall make and file its findings upon all the facts involved in the controversy, and its award, which shall state therein its determination as to the rights of the parties; and by such award, may require the company and every officer, director, agent or employee thereof, and any broker or other person, who authorized, directed, aided or consented to, such acts, to do such things and pay such amounts as shall be just and necessary or proper, to place the state, the company, or the purchaser in the same situation that it, or they, would have been in had the provisions of such sections and of such permit been complied with, or had the representations made to the commission been true or conformed to. If the commission shall find that such acts were not done in good faith, or were done for the purpose of evading the law, or that the representations made to the commission were made for the purpose of misleading the commission or that such acts were in wilful violation of the provisions of the permit, it shall make and file its findings and award as above provided, and in such award may declare the security to be voidable, at the election of the purchaser, or may make such other award as may be just and equitable in the premises. Provided, however, that no final determination and award shall be made by the commission, until

The constitutionality of sec. 1753—57 as amended by the Laws of 1921 is challenged upon two principal grounds: (1st) that it delegates to the *Railroad Commission* legislative power which is by the constitution vested in the legislature; and (2d) that it delegates to the *Railroad Commission* judicial powers which are by the constitution vested in the courts. In the view which we take of the case it will not be necessary for us to consider other objections to the validity of this section as amended. We shall not consider here the objections urged against the validity of the act as a whole on the ground that it is discriminatory and that it improperly classifies securities. In our view of this case, if the *Commission* may not proceed under the provisions of sec. 1753—57 (Stats. 1921) it cannot proceed at all. There is no petition before it invoking its jurisdiction in any other respect. The petition signed by *George E. Williams* recites that it is made "that a full investigation may be made as to whether said permit to sell stock was not obtained by false representations made to your said *Commission* of material facts . . . and as to the commission by the officers, direc-

after a public hearing, unless the parties affected thereby shall have waived in writing their right to such public hearing, and provided, further, that no such award shall be binding upon a party who has not so waived the right to public hearing, or who has not been given due notice thereof. The findings of fact made by the commission, acting within its powers, and the award, shall be subject to review by the courts in the same manner and subject to the same limitations as other "orders of the commission. If appeal shall not have been taken from such award in the manner and within the time specified, the commission, or any party interested, may present a certified copy of the findings and award of the commission to the circuit court for any county; whereupon said court shall, without notice, render judgment in accordance therewith, which judgment, until and unless set aside for lack of jurisdiction of the commission to make such award, shall have the same effect as though duly rendered in an action duly tried and determined by said court, and shall with like effect be entered and docketed. Nothing herein contained, and no action taken, or judgment rendered hereunder, shall have the effect of relieving the persons responsible for any illegal acts from the liabilities imposed by the next section.

tors, and brokers selling stock of said company . . . in wilful violation of the provisions of the permit obtained for the sale of the capital stock of said company, and in violation of sec. 1753—57 as amended; . . . that such suitable award as may be just and equitable in the premises be made."

This is not an application for a permit authorizing the sale of stock of the corporation or for the granting of a permit to a broker or agent, or relating to any other of the administrative features of the act. For the reasons stated in *Wisniewski v. State,* 178 Wis. 73, 189 N. W. 142, we shall not further discuss the constitutionality of the act as a whole.

It is to be noted that prior to the amendment of 1921 the section in question provided that every sale of a security issued without a permit should be void and that every sale of a security issued in accordance with a permit but not made in conformity with the provisions of the permit should be void. As amended the section provides, first, that the sale of every security issued in violation of the act and the sale of every security authorized but not made in conformity with the representations made to the *Commission* or with the requirements of the *Commission* are voidable, at the discretion of the *Commission.* This part of the section clearly confers upon the *Commission* the power to say whether securities issued in noncompliance with the law or sold in nonconformity with the requirements of the permit are to be considered valid or voidable. No one could know nor could a court ascertain in a particular case the rights of parties, because the final determination rested with the *Commission,* and, that, too, after rather than before the event. Certainly the power of the legislature to declare as it did in the act of 1919 that a violation of the act should render the sales void was a legislative act and an exercise of legislative power. Here the legislature, instead of prescribing the rule, has left it to the determination of the

*Commission* in each case. There is no claim that the power thus conferred has been abused or that the *Commission* has not endeavored to act with the highest motives in the public interest, but the validity of the law is not to be determined by what has been done but by what it authorizes to be done. Arbitrary power may be wisely exercised, but it opens the door to abuse and oppression. It has been our boast that this is a government of laws rather than of men. The basis of this statement is that the officers of the government under the constitution are subjected to constitutional restraints imposed by the people. Where officers are to exercise discretion it is carefully limited and controlled by the constitution. The statute in this case furnishes no guide, establishes no standard, makes no limitation, but by its terms vests in the *Commission* an unlimited and uncontrollable discretion.

The second clause of the act provides that if upon investigation the *Commission* shall make certain findings, it may by an award require the company or broker who committed the act to pay such amounts as shall be just and necessary or proper to place the state, company, or the purchaser in the same situation that it or they would have been in had the law and the permit been complied with. This clause is a legal curiosity. If there has been a violation of the provisions of the act or of the permit the *Commission* is to first ascertain whether the violation was in good faith or not. It must then investigate to discover whether or not the injury sustained may be remedied. The *Commission* is then given plenary power over all the officers, directors, agents, and employees, and over all brokers and other persons who aided or consented to the violation of the act or conditions of the permit, and is authorized to require them to do what?—to place the parties, not *in statu quo,* but in the position that they would have been in had the law or the permit been complied with or had the representations been true. The position that a purchaser would have been in, for instance, if the representa-

tions made had been true, would be a purely speculative thing. It would be one thing in the case of one stockholder and another thing in the case of another stockholder, depending on the character of the representations. In order to carry out the provisions of the statute the *Commission* would need to be vested not only with legislative and judicial powers but with powers of omniscience.

By the third clause, if the *Commission* shall find that the violation was not done in good faith, etc., it may in its discretion give the purchaser the right to declare the transaction voidable, thus in its discretion conferring upon or withholding from the purchaser the right to fix the legal status of the act, or it may make such other award as may be just and equitable in the premises. If this clause does not and was not intended to confer upon the *Railroad Commission* the powers of a court of equity, then it is difficult to imagine language that would. Under clause 3 the *Commission* is not confined to a determination of the rights of parties. It is authorized to prescribe their future conduct. Under this section the *Commission* not only exercises legislative, judicial, and administrative power, but also, in some particulars at least, may manage the affairs of the corporation. While no doubt the *Commission* may be much wiser in regard to management than the persons who invested their capital in the enterprise, we have not yet reached a point where it is thought wise to suppress entirely individual initiative. The right to life, liberty, and the pursuit of happiness guaranteed to every person by the constitution includes the right to make some mistakes.

To further disclose the infirmities of this section we call attention to the status of the particular matter here in controversy. The *Oshkosh Tractor Company* had been organized; an application had been made to the *Railroad Commission* for a permit to sell its securities; the permit had been granted; the *Oshkosh Tractor Company* had entered into a contract with the La Crosse Tractor Company

for the purchase of certain property; the capital stock of the *Oshkosh Tractor Company* had been subscribed for by a large number of persons; execution had been returned unsatisfied and sequestration proceedings begun; a receiver appointed; an action was about to be begun by the receiver upon the stock subscriptions, which constituted the main, if not the sole, asset in the hands of the receiver. In construing its own powers the *Commission* said:

"The *Railroad Commission* does not require any complaint of any sort—that is, any formal complaint of any sort, to be filed with it. The *Commission* does not consider itself limited by the complaint, if such is filed. . . . Almost never have we had verified complaint. If you will turn to the notice of hearing sent out, you will note that the notice sent out does not conform nor purport to conform to the complaint. As I understand the law, it provides that the *Commission* has a very broad power and discretion in holding these investigations and hearings, and, for that reason, I made the notice read *In re Oshkosh Tractor Company,* its application to sell its securities in the state of Wisconsin, the sale of its securities in the state of Wisconsin, its transactions with the La Crosse Tractor Company and other transactions in connection with said company. . . .

"For the present I think I will say that the *Commission* is interested not only in the specific matters set forth in this complaint, but it is interested in all of the various offshoots which are suggested by the notice which was sent out by the *Commission,* and for the present, therefore, we will take the testimony, and if counsel for any party desires to enter any objection, that is his privilege and the testimony can be taken subject to the objection."

Thereupon the *Commission* proceeded to inquire whether or not the *Oshkosh Tractor Company* was legally incorporated for the reason that fifty per cent. of its capital stock had not been subscribed and twenty per cent. thereof paid in; as to whether or not the *Oshkosh Tractor Company* had paid excessive salaries to its officers; as to whether or not the *Oshkosh Tractor Company* had paid excessive commis-

sions on the sale of its capital stock; as to whether or not
the *Oshkosh Tractor Company* was not legally dissolved at
a meeting of its stockholders held on the 16th day of Janu-
ary, 1922; as to whether the surrender made by the *Osh-
kosh Tractor Company* to the La Crosse Tractor Company
was a valid transaction; and there was testimony as to
every transaction had by the *Oshkosh Tractor Company,* its
promoters, officers, and agents covering a period from the
month of March, 1921, until the dissolution of the com-
pany on the 16th day of January, 1922.   Testimony was
also taken regarding the incorporation and transactions of
the Wisconsin Tractor Sales Company and the La Crosse
Tractor Company from the dates of their respective incor-
poration to the time of the hearing; and other matters, the
general nature of which is indicated by that already set out.
Upon this state of facts the *Commission* was proceeding
without pleadings, without an issue being framed, to hear,
try, and determine the entire controversy and to make such
an award as should be just and equitable in the premises.
Such an attempt to administer justice wholesale perhaps has
never previous to this time been before the courts.   Here
were numerous questions vitally affecting citizens whose
rights had already accrued and become fixed under the law,
which were to be reviewed, determined, and settled in this
proceeding.   It may be that a procedure such as that under-
taken in this case would be more expeditious and less ex-
pensive than an orderly proceeding brought in the courts
invested with authority under the constitution to make a
determination of this character.   It is equally true that the
cost of a democratic government far exceeds that of an
autocratic government, but it is also true that under the
more expensive form of government people enjoy greater
liberty and they are better protected in the exercise of their
rights as citizens.   If the law of 1921 is a valid enactment
the *Commission* no doubt made a justifiable interpretation
of its provisions.   Sec. 1753, Stats., provides that stock of

a corporation issued "except in consideration of money or of labor or property estimated at its true money value, actually received by it, equal to the par value thereof," shall be void. The permit no doubt required the *Oshkosh Tractor Company* to comply with this section. If issued contrary to the terms of the permit, jurisdiction is conferred upon the *Commission* to declare the issue voidable in its discretion. It would scarcely be contended that the permit was of greater efficacy than the provision of the statute, but by this device the determination of the validity of an issue made under a permit is in this respect taken from the courts and vested in the *Commission.* In the event the terms of the permit have been violated, the *Commission* may declare the transaction voidable or valid. The court could only declare it void if the statute had been violated.

By the fourth clause the method of procedure is prescribed in general language.

By the fifth clause findings of fact made by the *Commission* are to be reviewed, not in accordance with the provisions of sec. 1753—56, under which the review of other orders and decisions made by the *Commission* may be had, but as "other orders of the *Commission.*" This was no doubt intended to withdraw the right to review under sec. 1753—57 from the application of that part of sec. 1753—56 which provides that the provisions of paragraphs (b) and (c) of sec. 1797—16 shall not apply. So that in the event of a review the court would be obliged to return the record to the *Commission* for further experimentation.

The act of 1921 so plainly violates the fundamental principles of constitutional law that a brief analysis of its provisions makes that fact clearly apparent. Were it not for the fact that there has been an earnest good-faith attempt to sustain its validity, and a fear has been expressed that if it be declared unconstitutional the validity of other acts of vital importance to the state would be drawn in

question, we should not pursue the discussion further. Under the circumstances, however, we deem it not inappropriate to consider some of the arguments relied upon to sustain the validity of the statute. It is urged, for instance, that the industrial commission is vested with power to determine whether or not an employee is performing services growing out of and incidental to his employment, the extent of his injuries, what death benefits are fair and just, the reasonableness of medical and hospital bills, and many similar things. It is true that the law invests the industrial commission with very broad powers. *Borgnis v. Falk Co.* 147 Wis. 327, 359, 133 N. W. 209. But the law was sustained because it merely authorized the industrial commission to ascertain jurisdictional questions in cases of dispute, its jurisdiction depending upon the facts. The commission was authorized to ascertain whether or not the facts existed. When the facts were found, the law itself prescribed the compensation. The commission had no power to fix the compensation. It did not have the power to fix a death benefit as it might determine to be fair and just. A fair and just benefit was limited by requiring the commission to take into consideration the death benefit allowed in other cases where the circumstances there referred to did not exist. Sub. (4) (c), sec. 2394—9, Stats. The statute fixed the standard and the commission was authorized within a limited field to make fair and just apportionment, depending upon the circumstances. Not only that, but *Borgnis v. Falk Co., supra,* did not pass upon the validity of every provision of the workmen's compensation act. Specific objections to the law, which did not invalidate the entire act, were not passed upon but were expressly reserved for future consideration.

It is further argued that "the railroad commission law empowers that tribunal to pass upon the reasonableness of rates and various practices of common carriers and public

utilities.    Courts had formerly exercised the power to hold rates unreasonable."    This embodies an entire misconception of the province of the *Railroad Commission.*

In *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146 (116 N. W. 905), at p. 164 the court said:

"If it were conceded that the *Commission* had power or discretion to fix one of several rates, either of which would be just and reasonable, it would be hard to say that this was not a delegation of pure legislative power to the *Commission.*    But the theory of this law is to delegate to the *Commission* the power to ascertain facts and to make mere administrative regulations."

And it was further said:

"But the theory and the mandate of the law is that this point [a reasonable rate] always exists under any combination of conditions and is always discoverable although not always discovered."

The failure to apprehend the true import and meaning of this declaration has been the cause of much confusion in the books.    Under the theory of the law there is but one rate which is just and reasonable.    It is the duty of the *Commission* to discover and declare that rate, taking into account all of the necessary factors which must be considered to ascertain it.    Courts have never had the jurisdiction to ascertain and declare a reasonable rate.    The power to do that rests entirely with the legislature.    The legislature vests in the *Commission* the power to ascertain the fact; when the fact is ascertained, the statute itself and not the order of the *Commission* makes the rate effective.    Courts, upon the other hand, having no administrative power, can be called upon to act only when it appears that the rate is confiscatory under the constitution, or under the terms of the statute it is unreasonably low, or when it is so high as to be oppressive and therefore unreasonable.    The power which the *Railroad Commission* exercises in discovering and de-

claring a rate is an entirely different power than that exercised by the court when its jurisdiction is invoked to declare a rate confiscatory or unreasonable. One is a part of a legislative act and the other is the exercise of a purely judicial power. A similar analysis would dispose upon the same grounds of other suggested analogies. Commissions, boards, and other administrative bodies have often adopted the language of courts as well as their methods of procedure, and this serves to further obscure the line dividing these fields one from another.

Coming back to the statute under consideration, if the law did nothing more than authorize the *Commission* to ascertain whether or not a violation of the statute was inadvertent and not wilful and that when that fact was established the statute declared that a certain result should follow, the section would then be analogous to the statutes granting like powers to other bodies. Analogy without analysis is not very helpful in any field and is quite apt to be misleading in constitutional law. The difficulty with the statute is that it leaves it in the discretion of the *Commission* to say what shall happen. This clearly brings it within the condemnation of the decision in *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209, as a delegation of legislative power; the fact that it attempts to delegate to the *Commission* the power to make an award which shall be just and equitable without erecting any standard, but leaving it wholly within the discretion of the *Commission,* makes it a clear delegation of judicial power, using these terms in their commonest and best understood meaning. No refinements need to be indulged in in this case to show that the powers granted to the *Commission* are those which are vested by the constitution respectively in the legislature and the courts. Our attention is called to no case where a similar delegation of power has been sustained where the act itself did not prescribe some standard by which the discretion of the commission or other administrative body was to be controlled

and measured.    Under this act the corporation or person might be penalized or punished at the will of the *Commission*. Even a court would be powerless to give relief, because it could not substitute its judgment for that of the *Commission* if the *Commission* was acting within its proper field.    The right of review extends no further than to ascertain whether or not the *Commission* has acted within its jurisdiction.    Courts cannot substitute their discretion for that of an administrative body, because to do that would constitute the exercise of administrative power.    *In re Appointment of Revisor,* 141 Wis. 592, 597, 124 N. W. 670. We are not called upon in this case to consider the distinction between legislative and administrative power.    See *State ex rel. Buell v. Frear,* 146 Wis. 291 (131 N. W. 832), at p. 304 *et seq.*

Sec. 1753—57 as amended by the Laws of 1921 is void because it attempts to confer upon the *Railroad Commission,* an administrative body, both legislative and judicial power, in violation of the constitution.    In arriving at this conclusion we give full weight and effect to the established principle that a law must be clearly in conflict with the constitution to warrant a court in holding it void and of no effect.    Nor are we unmindful of what is said in *In re Appointment of Revisor,* 141 Wis. 592, 124 N. W. 670, regarding the nature of administrative powers which lie without the field both of the legislative and judicial departments of government.    Nor do we in any respect depart from the principles laid down by this court in various cases sustaining the powers of various administrative bodies. The provisions of this enactment are so clearly in violation of constitutional principles that exposition is not necessary to further disclose their invalidity.    Nor shall we attempt to lay down a rule which shall be a guide in future cases.    Definition is much more difficult than classification. Classification relates to a particular thing or object.    Definition seeks to cover the entire field and by terms of inclusion

and exclusion to make certain that which is included within it.   As is pointed out in *In re Appointment of Revisor, supra,* "it is impossible to say at any given place: here is a line where legislative power ends and judicial power begins; all on one side of this line is legislative and all on the other side is judicial, and no single power can be both."

The statute being void because in violation of the constitution, the circuit court was in error in denying the motion of the receiver to enjoin the *Railroad Commission* from proceeding further in the matter embodied in the petition presented by *George E. Williams.* The *Railroad Commission* having no jurisdiction nor authority to proceed in the premises, it is not entitled to the custody of the books, papers, documents, files, etc., relating to the business of the *Oshkosh Tractor Company,* and the motion of the receiver in that respect should have been granted.

*By the Court.*—That part of the order appealed from is reversed, and cause remanded for further proceedings according to law as indicated in this opinion.