## IN RE KELLEY.

[No. 9,948.   Filed June 1, 1917.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Medical Services.*—*Liability of Insurer.*—Under the Workmen's Compensation Act, Acts 1915 p. 392, an employer may authorize a physician to continue the treatment of an injured employe beyond the first thirty days, if necessary to effect a cure, and such services are included in the benefits provided by the act, and an insurer under a policy contracting to pay all benefits provided by the law for physician's fees, etc., may be held liable therefor.   pp. 594, 598, 601.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Construction.*—The Workmen's Compensation Act, Acts 1915 p. 392, should be liberally construed to promote the ends intended to be secured by its enactment, and effect should be given to all parts of the statute, when possible, in harmony with the spirit and purpose of the whole act.   p. 598.

3. INSURANCE.—*Workmen's Compensation Insurance.*—*Contract.*—*Construction.*—A carrier of compensation insurance contracts with reference to all the provisions of the Workmen's Compensation Act, Acts 1915 p. 392, and is bound by the spirit and purpose of the law as well as by the letter of the act.   p. 601.

From the Industrial Board of Indiana.

Certified Question of Law.

Proceedings under the Workmen's Compensation Act in the matter of John Kelley.   Question of law certified by the Industrial Board.   *Question answered.*

FELT, J.—In pursuance of the provisions of §61 of the Workmen's Compensation Act (Acts 1915 p. 392), the Industrial Board has duly submitted to this court a statement of facts and a question of law as follows:

Statement of facts: "That on the 12th day of July, 1916, A was in the employment of B at an average weekly wage of $13.50; that on said date the employe received a very severe personal injury by an accident arising out of and in the course of his employment with the employer; that the employer had actual personal knowledge of the said injury at the time that it occurred and employed C, a licensed, practicing physician, to treat the employe's injuries; that among other complications arising from said injury blood poisoning set in; that at the expiration of thirty days from the injury the employe was in such a serious condition that continued medical treatment was absolutely necessary in order to save his life; that B, the employer, expressly ordered and directed the physician C to continue the treatment of A until he was recovered from said injury; that at the time of said accidental injury D was the compensation insurance carrier of B; that D's policy of insurance issued to B provides that the insurer shall assume and promptly pay for and in behalf of the employer, to the persons entitled thereto, all benefits provided for by the Indiana Workmen's Compensation Act, for physicians' fees, hospital fees, compensation and burial expenses; that immediately prior to the expiration of the first thirty days from the injury of A, D served written notice upon both A and B that, as the compensation insurance carrier, it would not pay for any treatment of A beyond the first thirty days after his injury; that C continued the treatment of A until he was recovered from his injury, and his charge for treatment after the expiration of the first thirty days is $90, which is admitted by all parties to be reasonable and to be a charge that prevails in the community in which the employe resided, for similar treatment of injured persons of a like standard of living,

when such treatment is paid for by the injured person.

"The physician has filed a claim for $90 and asks the approval of it as against both the employer and the insurance carrier; the employer consents to the approval but the insurance carrier denies the right to have the claim approved as against it. It makes no contention as to the right to have a proper medical claim approved against it. In fact, it expressly states that under section 74 of the Indiana Workmen's Compensation Act and the provisions of sections 65 and 66, such a claim may properly be made against both it and the employer."

"*Certified Question of Law.* Upon the facts above stated is the physician entitled to have his claim approved as against the compensation insurance carrier?"

The facts are clear and conclusive that the employer expressly authorized the physician to continue the treatment of the injured employe beyond the first thirty days following the injury, if necessary to effect a cure, and they are equally conclusive that to effect a cure it was absolutely necessary to so continue the treatment. Therefore the facts are conclusive and permit of but one inference, viz., that the services of the physician in controversy were duly authorized by the employer.

Section 25 of the Workmen's Compensation Act, in addition to providing for medical services to be furnished by the employer "during the thirty days after an injury," also provides that "during the whole or any part of the remainder of his disability resulting from the injury, the employer may, at his option, continue to furnish or cause to be furnished, free of charge to the employe * * * an attending physician."

The policy held by the employer provides that "the insurer shall assume and promptly pay for and in be-

half of the employer, to the person entitled thereto all benefits provided by the Indiana Workmen's Compensation Act for physicians fees, hospital fees, compensation and burial expenses." If the services of the physician rendered beyond the first thirty days after the injury, by authorization of the employer, are included in the benefits provided by the law for an injured employe in cases like the one under consideration it is clear that the language of the policy is sufficiently broad and comprehensive to include compensation therefor.

The language of §25, *supra,* shows that the employer in voluntarily continuing to furnish a physician after the first thirty days had expired and until the injured employe had recovered, was acting within the purview of the statute. Section 68 of the act provides that: "Every employer under this act shall either insure or keep insured his liability hereunder in some corporation, association or organization authorized to transact the business of workmen's compensation insurance in this state, or shall furnish," etc. Section 73 provides that notice to or knowledge of the injury on the part of the insured shall be deemed notice or knowledge on the part of the insurer; "and that the insurer shall in all things be bound by and subject to the awards, judgments or decrees rendered against such insured." Section 74 is as follows: "No policy of insurance against liability arising under this act shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to same all benefits conferred by this act, and all installments of the compensation that may be awarded or agreed upon, and that the obligation shall not be affected by any default of the insured after the injury or by any default in the giving of any notice required by such policy or otherwise. Such agreement shall be construed to be a direct promise by the insurer to the person entitled to

compensation enforceable in his name." Section 75 provides that: "Every policy for the insurance of the compensation herein provided, or against liability thereof, shall be deemed to be made subject to the provisions of this act."

While the employer would be liable for authorized services independent of the statute, the legislature nevertheless incorporated into the act the provision recognizing the voluntary employment of physicians by employers to continue treatment of injured employes beyond the period of the first thirty days after the injury, and it is reasonable to believe that it was so incorporated to serve some purpose in carrying into effect the intent of the legislature.

Here there can be no doubt that an injured employe, the employer and the insurance carrier are all within the purview of the act under consideration.

2. Such being the case, the statute should be liberally construed to promote the ends intended to be secured by its enactment. Effect should be given to all parts of the statute where it is reasonably possible so to do in harmony with the spirit and purpose of the whole act. *Fort Wayne, etc., Supply Co.* v. *Pfeiffer* (1915), 60 Ind. App. 615, 624, 111 N. E. 192; *Greenbush Cemetery Assn.* v. *Van Natta* (1911), 49 Ind. App. 192, 198, 94 N. E. 899; *Hyland* v. *Rochelle* (1913), 179 Ind. 671, 676, 100 N. E. 842, 845, 847.

The statute provides that the injured employe shall accept the physician voluntarily furnished by his employer, and subjects him to certain penalties for

1. refusal so to do, unless in the opinion of the Industrial Board such refusal was reasonably justifiable. The statute makes every such policy of insurance "subject to the provisions" of the act, and in legal effect a "direct promise by the insurer, to the person entitled to compensation enforceable in his name." In

determining whether the insurance carrier is liable in the instant case we are to view the contract of insurance not only as evidenced by the provisions of the policy itself, but we are to consider the provisions of the statute and the purposes of its enactment as entering into and becoming a part of such contract.

The statute clearly recognizes the fact that the employer is interested in the speedy recovery and early return to work of the injured employe; that as a rule the employer is equally, if not better, qualified than the employe to select those competent to render the necessary medical or surgical assistance; that the liability of the employer under the act is not in the nature of a penalty imposed upon him, nor is the assistance provided for the injured employe and his dependents bestowed as an act of charity. Rather the plan is a recognition of the economic truth that such expense is a legitimate element of the cost of production ultimately to be borne by the consumers of the product or by society; that the employer is used as the first and necessary actor in the execution of such plan.

The spirit and purpose of the act not only recognize the fact that the employer has a business interest in the speedy and complete recovery of an injured employe, to the end that he may return to his work at the earliest possible date, but it also takes cognizance of the fact that from the standpoint of economy and sound business principles, both the employer and the insurance carrier may find it to their advantage to have the treatment of an injured employe continued beyond the first thirty days, for the purpose of shortening the period during which compensation would have to be paid such employe, and in many instances to lessen the probability of death with its resulting liability under the act to dependents of the deceased employe.

With these observations in mind, it becomes appar-

ent in exercising the option of providing a physician beyond the first thirty days after injury, in cases of his own selection, the employer may be actuated by sound business principles, which operate not only to the advantage of the injured employe but also to the advantage of the employer and likewise in many instances to the advantage of the insurance carrier. Thus it will be seen that, while the employment of a physician to render services beyond the compulsory thirty days provided by the statute is voluntary on the part of the employer, his action may nevertheless rest upon purely business considerations, entirely independent of any charitable or humanitarian motives.

The legislature apparently recognized the difficulty of fixing an arbitrary limit for the period of medical or surgical treatment that would be satisfactory and equitable in every case and by recognizing such voluntary continuation of such services by the employer in cases appealing to his judgment, thereby made provision to encourage and extend the beneficial results intended to be secured by the act, beyond the compulsory provisions of the law. To recognize such voluntary employment and to link it up with other provisions of the act which have very positive and definite results depending upon the acceptance or rejection of such assistance by the employe, was evidently intended to encourage employers to further the practical and beneficial ends sought to be secured by such law.

We then have a statute which seeks to encourage employers to carry out and extend the beneficial and practical results made possible by the act, and it would be unreasonable to say that the broad and comprehensive provisions relating to insurance were not intended to cover the expense or liability incurred by the employer in so doing. To hold otherwise would be to say that the legislature intended the law so to operate but did

not intend to make provision for the employer to fully
insure his business and provide the necessary indemnity
to cover his liability in helping to carry into effect and
make practical and efficient the Indiana Workmen's
Compensation Act.

The broad powers conferred upon the Industrial
Board are ample to prevent the abuse of any of the pro-
visions of the law applicable to insurance carriers as
well as to the other parties concerned in its practical
operation. Section 66 expressly provides that: "All
questions arising under this act, if not settled by agree-
ment of the parties interested therein with the ap-
proval of the board shall be determined by the board
except as otherwise provided for." This section makes
definite the general supervisory power of the board as
evidenced by the prevailing tenor of the act, especially
indicated by the following sections, viz.: §§22, 24, 25,
27, 31, 32, 42, 43, 44, 45, 46, 55, 56, 57, 58, 59, 60,
62, 68, 70 and 72. The insurance carrier con-
3. tracts with reference to all the provisions of the
statute, and is bound by the spirit and purpose
of the law as well as by the letter of the act.

To give effect to this law and secure the ends that
are apparent from its provisions, considered in their
entirety, we must of necessity depart from the
1. rules of law and much of the reasoning employed
in dealing with negligence cases. The purpose
or intent of this law is different from that which ob-
tains in dealing with questions of duty and fault and
the legal right to recover damages.

Under this act we deal with facts viewed from the
humanitarian standpoint of promoting both social and
economic welfare which invoke only the remedies and
afford the relief provided by the statute independent of
other laws. So far as we have ascertained this pre-
cise question has not been decided under any statute

substantially like the act now under consideration. As we interpret the law, the question certified to this court by the Industrial Board should be, and is, answered in the affirmative. As tending by analogy to support the conclusion announced, we cite the following: 1 Honnold, Workmen's Compensation §§185, 193, 196, 198, 199; *Milwaukee* v. *Miller* (1913), 154 Wis. 652, 144 N. W. 188, L. R. A. 1916A 1, Ann. Cas. 1915B 847; 1 Bradbury, Workmen's Compensation 958 *et seq.*

NOTE.—Reported in 116 N. E. 306. Workmen's compensation: allowance for hospital and medical services rendered employe, L. R. A. 1917D 178, Ann. Cas. 1914C 86.