## CONTINENTAL CASUALTY CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5809.    Decided October 18, 1922.    (210 Pac. 127.)

1. MASTER AND SERVANT—INDUSTRIAL COMMISSION AN ADMINISTRATIVE BODY. The Industrial Commission is an administrative body, and is in no sense a judicial body, though many of its acts are quasi judicial.[1]

---

[1] *Industrial Commission* v. *Evans*, 52 Utah, 394, 174 Pac. 825; *Utah Fuel Co.* v. *Industrial Commission*, 57 Utah, 246, 194 Pac. 122.

2. MASTER AND SERVANT—INDUSTRIAL COMMISSION NOT TRIBUNAL TO GRANT RELIEF FOR FRAUD OR MISTAKE IN COMPENSATION INSURANCE POLICY. The Industrial Commission, being an administrative body, is without authority to determine that because of fraud or mistake an insurance policy, issued for a consideration and covering liability antedating the date of the policy, was not in force at time of an accident, which happened before that date, but within the time covered by the policy, and the commission has no power to do otherwise than to enforce and apply the terms of the policy.

3. INSURANCE—PARTIES MAY ASSUME OBLIGATIONS ANTEDATING DATE OF CONTRACT. Parties to a contract of insurance have the right to assume obligations antedating the date of the contract if they so elect and the contract is founded on a consideration.

4. MASTER AND SERVANT—INDUSTRIAL COMMISSION WITHOUT AUTHORITY TO CONSTRUE COMPENSATION INSURANCE POLICY TO COVER WORKMEN OF PARTY NOT NAMED AS INSURED. The Industrial Commission, being an administrative body, is without authority to construe and apply a contract of insurance to cover workmen in the employ of one not named as the insured, and therefore an award against insurer for death of an employé of an independent contractor operating mine under contract with the insured is unauthorized, though the policy described the mine as the place of employment.

Original proceedings by the Continental Casualty Company against the Industrial Commission of Utah and others to review an award of the Commission awarding compensation under the Workmen's Compensation Act (Comp. Laws 1917, §§ 3061-3165) for the death of Rasmus H. Nielson to his widow and minor children.

AWARD ANNULLED.

*George H. Smith* and *R. B. Porter,* both of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

GIDEON, J.

Proceeding to review an award of the Industrial Commission in favor of the widow and minor children of one Rasmus H. Nielson, who lost his life as the result of an accident happening near Duchesne, Utah, on the 4th day of August, 1921. Deceased died at 3 p. m. on the day following the accident.

The principal contentions of plaintiff, the Continental Casualty Company, for annulling the award, may be stated: (a) That no policy of insurance was in existence at the date of the accident; (b) that the deceased was not an employé of the insured at the time.

It appears that the Elaterite Varnish & Rubber Company, a corporation, owned or held under lease certain mining property located near Duchesne, in this state. The home office of the rubber company is at Los Angeles, Cal. That company operated this property in the fall of 1920, and until about the 1st day of March, 1921. The testimony is to the effect that on or about March 1, 1921, one R. M. Pope entered into a contract with the rubber company under the terms of which Pope was to take ore from the mine at his own expense and deliver the same to a railroad shipping point for the rubber company. For the mining and delivery of such ore he was to receive $55 per ton. Pope was a stockholder of the rubber company.

It also appears that on or about the 28th of July, 1921, either R. M. Pope personally or some one representing him applied to a Mr. Greaves with a view of obtaining through him some industrial insurance for the workmen employed in this mine. Mr. Greaves was engaged in the insurance business, and resided in Duchesne county. As a result of that interview Greaves wrote to J. B. Moreton Company of Salt Lake City. J. B. Moreton Company is admittedly the agent of the plaintiff. In reply to that communication the Moreton Company wrote Mr. Greaves for certain information necessary in the preparation of the policy, and advised him as to the amount of the premium and the basis upon which the premium was determined. That letter was received by Mr. Greaves, and handed to Mr. R. M. Pope, and he in turn left it with a brother of his, an attorney at law. At the same

time R. M. Pope signed a bank check and left it with this
brother to be used in paying the premium on the insurance.
This occurred on or about the 2d or 3d of August. In the
forenoon of August 4th Mr. Greaves sent another letter to
the Moreton Company, wrote into the check the amount of
the premium, inclosed the check with the letter, and re-
quested that the policy of insurance be issued. The letter,
however, was not deposited in the post office until the after-
noon of August 5th. The accident happened about 5:30
p. m. of August 4th. It appears that Mr. Greaves, after
writing the letter, left his office, and did not return until
the afternoon of August 5th. At that time the letter was
deposited in the post office. Some two hours later he learned
of the accident. The letter remained in the post office -at
Duchesne until the morning of August 6th. It was received
by the Moreton Company on the 8th of that month. The
policy was issued and bears date August 8th.

It is provided in the policy that it shall be in force from
August 1, 1921, to August 1, 1922. It is insisted on the part
of plaintiff that no policy was in existence at the time of the
accident; hence no liability on the part of the insurer. Dur-
ing the hearing before the commission counsel for the plain-
tiff stated that—

The casualty company "feels that the policy was secured
through fraud, that the check and application and letter from Mr.
Greaves was not forwarded to the National Surety Company until
after Mr. Greaves had learned of the accident to Mr. Nielson."

It does not appear that any suggestion was made either by
Mr. Greaves or by Mr. Pope respecting the date when the
policy should become effective. For some reason, possibly
as a matter of convenience in computation, the agent of pe-
titioner wrote into the policy that it should be in force from
August 1, 1921. The policy was presented and made a part
of the record before the commission.

Counsel for both sides have discussed in the printed briefs
the relationship of Mr. Greaves to the casualty company. It
is argued on behalf of defendant that he was an agent of that
company. On the other hand, it is contended by counsel for

plaintiff that such relationship did not exist. We do not think it necessary to determine that question. We therefore express no opinion as to what the relationship of Greaves was to the plaintiff.

The Industrial Commission of this state is an administrative body. Some of its acts, in fact many of its acts, are quasi judicial, but it is in no sense a judicial body, and is distinctly an administrative body. *Industrial Com.* v. *Evans*, 52 Utah, 394, 174 Pac. 825; *Utah Fuel Co.* v. *Ind. Com.*, 57 Utah, 246, 194 Pac. 122. The question of the dependency being admitted, the issuance and delivery of the policy also being admitted, and the accident happening within the time covered by the policy, the Industrial Commission was without authority to determine or hold that its terms were not in force and binding upon the casualty company at **1-3** the time of the accident. If the policy was obtained by fraud or if a mistake was made in fixing the date when the same should become effective, the Industrial Commission is not the tribunal to grant the plaintiff relief. The policy was issued for a consideration named by the agent of plaintiff. That consideration was admittedly paid. We know of no principle of law, nor has any been called to our attention, denying to parties the right to assume obligations antedating the date of the contract if the parties so elect and the contract is founded upon a consideration. The policy was before the commission. The commission had no power to do otherwise than to enforce and apply its terms as the same appear in the policy. Plaintiff's first contention must therefore fail.

It is further claimed by plaintiff that the deceased was not an employé of the insured at the time of the accident. The name of the insured as the same appears in the policy of insurance is the Elaterite Varnish & Rubber Company. It is, however, without dispute that the obligation assumed by the plaintiff in issuing said policy was for the protection of men working in the particular mine where the deceased was employed. The policy describes the location of the place and the employment as ''dry canyon, about sixteen miles

west of the city of Duchesne and about three miles south of the Strawberry river in Duchesne county, Utah.'' The Elaterite Varnish & Rubber Company had no employés within the state of Utah, unless the workmen in this particular mine described in the policy were such employés. No other mine was being operated or worked in that canyon or in that vicinity. Such being the admitted facts, could the Industrial Commission disregard the wording of the policy that it insured employés of the rubber company and make an award for an employé of one not named in the policy? It conclusively appears that the deceased was employed by one R. M. Pope, who was operating the mine under contract with the Elaterite Varnish & Rubber Company.     4 As stated elsewhere in this opinion, the Industrial Commission is an administrative body. It is not vested with power to reform a contract or to make a new contract to conform with the intent of the parties. That power belongs to another forum. The policy of insurance, although bearing date subsequent to the date of the accident, by its terms undertook to insure the employés of the insured from a date antedating the date of the contract. In the discussion of the first objection to the award made by the plaintiff it was held that it was the duty of the commission to enforce the letter of the contract. By parity of reasoning the commission was without authority to construe and apply the contract of insurance to include or cover workmen in the employ of either an individual or corporation not named as the insured in the policy of insurance. It follows, therefore, that the award made by the commission must be annulled. It is so ordered.

After the case was argued and submitted an opinion was rendered affirming the award. A petition for rehearing was subsequently filed, and upon a more thorough investigation and consideration of the record and authorities the court has concluded that its former opinion should not stand. That opinion is therefore recalled, and the views herein expressed will be published as the opinion in the case. The petition for rehearing is denied.

CORFMAN, C. J., and WEBER, THURMAN, and
FRICK, JJ., concur.