[S. F. No. 15346.  In Bank.—July 23, 1935.]

BANKERS INDEMNITY INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, etc., and ARAM MERZOIAN, Respondents.

McEnerney, Morris, Gillen & McEnerney, Leo J. McEnerney and Charles B. Morris for Petitioner.

Everett A. Corten and Arthur I. Townsend for Respondents.

CURTIS, J.—This proceeding was instituted before the District Court of Appeal for the purpose of annulling an award of the Industrial Accident Commission in favor of respondent Aram Merzoian, and against petitioner Bankers Indemnity Insurance Company. The petition was denied by the District Court of Appeal, and an order was subsequently made transferring the proceedings to this court after the decision by the Appellate Court.

The question involved in this proceeding is whether the policy of insurance issued by petitioner in which the name of the employer is stated as "S. A. Merzoian Company, a copartnership composed of Sam Merzoian and Aram Merzoian", covered the liability of Sam Merzoian for an injury sustained by Aram Merzoian in the course of his employment by Sam Merzoian. The award of the commission in favor of Aram Merzoian was predicated upon the following proven facts: Aram Merzoian is the father of S. A. Merzoian, frequently referred to as Sam Merzoian. The father had been in business for some years in the city of Fresno prior to selling out said business to his son some time previous to the year 1931. Since said sale S. A. Merzoian has been the exclusive owner of said business, which was carried on by him under the fictitious name of S. A. Merzoian Co. Some time in 1932 he took out a policy of insurance with the petitioner covering his liability under the Workmen's Compensation Act. At the expiration of a year it was renewed for another year, and shortly after the renewal policy was issued the injury to Aram Merzoian involved in this proceeding was sustained. The original policy, and the subsequent one, were made out in the name of S. A. Merzoian Co., a copartnership composed of Sam and Aram Merzoian. By express provision in each policy the partners were excluded from all coverage thereunder. Just prior to the issuance of the earlier of said policies S. A. Merzoian called upon a Mr. Knapp of the firm of

Shepherd & Knapp, insurance brokers, and applied to him for compensation insurance. This firm of brokers represented the Bankers Indemnity Insurance Company, the petitioner, but had no authority to write compensation insurance. Shepherd & Knapp communicated with petitioner in San Francisco regarding S. A. Merzoian's request for compensation insurance, with the result that petitioner issued its policy of insurance as stated above, and at the expiration thereof issued a second or renewal policy. At the time S. A. Merzoian made application for said insurance he told Knapp to make the policy out in the name of S. A. Merzoian Co. Knapp assumed that the business was carried on by the father and son as a copartnership composed of S. A. Merzoian and Aram Merzoian, and so informed the petitioner, with the result that the policy was made out in the partnership name. The same course was followed when the second policy was issued. The policies were delivered to S. A. Merzoian soon after the dates of their respective issuance, but he did not discover that they were made out in the name of the partnership until after Aram Merzoian sustained his injury. On this evidence the commission found that "By reason of mutual mistake of the parties at the time of its execution, the said policy did not correctly express the intention of the parties respecting the identity of the assured, which intention was that the policy should insure Samuel A. Merzoian, transacting business under the name of Samuel A. Merzoian Company, and in the judgment of the Commission the said defendant is entitled to a reformation of the said policy so that it shall effectuate the insurance of the defendant Samuel A. Merzoian, transacting business under the name of the S. A. Merzoian Company." The commission accordingly reformed the policy and awarded compensation in favor of Aram Merzoian and against petitioner.

Petitioner now contends that the evidence before the commission was insufficient to show a mutual mistake between the parties to the insurance policy, and furthermore, that the commission is not clothed with equity powers and therefore it was without jurisdiction to adjudicate a reformation of the policy of insurance.

Petitioner takes the position in support of its contention that there is an insufficiency of the evidence to support the findings of the commission that there was a mutual mis-

take of the parties in the execution and delivery of the policy of insurance, that it had no dealings directly with the insured, but that the insured in negotiating for the policy dealt solely with Shepherd & Knapp, insurance brokers, who had no authority from petitioner to write compensation insurance, and therefore the acts of these brokers cannot in any sense be regarded or held to be the acts of the petitioner insurance company. The evidence clearly shows that Shepherd & Knapp represented petitioner as its agent with full authority to write all kinds of insurance except compensation insurance, and as to compensation insurance these agents were merely soliciting agents of petitioner, and when they secured any application for compensation insurance, they reported that fact to petitioner and the latter, if it approved of the business, wrote the policy and sent the same to their agents for delivery to the insured. This plan of action was followed by petitioner and its agents in the procuring and execution of the policy of insurance under which the award herein was made against petitioner and in favor of Aram Merzoian.

This subject is discussed in Cooley's Briefs on the Law of Insurance, and the rule governing the liability of an insurance company for the acts of its soliciting agents stated as follows:

"From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent with power to issue policies, a soliciting agent, or merely medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it is so stipulated in the application or policy."

The foregoing statement is quoted in full in *Lyon* v. *United Moderns*, 148 Cal. 470, 475 and 476 [83 Pac. 804, 113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (N. S.) 247], and the rule enunciated therein is expressly approved in the following language:

''An examination of many of the authorities satisfies us that while there is some conflict in the cases on some of the matters included in this statement, the great weight of authority is with the statement as a whole, where the insured acts in good faith and is himself free from fault. This court has already indicated its support of the rule enunciated,'' citing authorities. The commission, at least impliedly upon sufficient and competent evidence, ·found that the insured under the present policy of insurance acted in perfect good faith in his application for said policy for himself, doing business under the fictitious name of S. A. Merzoian Co. By the mistake or misunderstanding of the insured and the agents, the latter gained the erroneous impression that the policy was to be made out in the name of the partnership, and the agents so informed the petitioner, with the result that the policy was not made out in the name of the insured, but in the name of a partnership which was nonexistent.

Under the authorities cited above it must be held that the acts of Shepherd & Knapp as such soliciting agents, in so far as said acts were instrumental in effecting said insurance, were the acts of petitioner, and the mistake made by them and acted upon by petitioner, which resulted in the error in said policy of insurance, was the act of the petitioner. As we have seen, S. A. Merzoian, in perfect good faith, applied for and thought he had secured a policy covering his own individual liability.

The evidence, we think, clearly shows a mutual mistake on the part of S. A. Merzoian, on the one hand, and said insurance agents on the other. S. A. Merzoian desired insurance for himself, doing business under the fictitious name of S. A. Merzoian Co. It would be idle to say that he desired insurance for the partnership when there was no such partnership in existence. It is equally clear that Shepherd & Knapp desired to secure for Merzoian the precise kind of insurance which the latter desired. In the confusion of the name in which Merzoian was doing business, the policy was made out by the petitioner upon information furnished it by Shepherd & Knapp, in the name of Merzoian and Company, as a partnership, when it should have been in the fictitious name in which S. A. Merzoian was individually doing business. S. A. Merzoian, believing the policy had been made out to him individually and without observing the error, accepted

the policy, paid the premium required, and the same was in his possession in full force and effect at the time of the injury to Aram Merzoian. We have treated this case as if there were but one policy issued for the entire period of time involved, instead of the two policies covering said period of two years. It is evident that the mistake under which the first policy was issued was carried into the issuance of the second policy, as the latter was simply a renewal of the first policy. The evidence clearly shows that both policies were issued under a mutual mistake of the parties.

As we view the proceedings, by far the more important question involved herein relates to the power of the commission to exercise equitable jurisdiction in this matter and to adjudicate a reformation of said policy of insurance.

The commission derives its powers from, and its jurisdiction is fixed by, section 21 of article XX of the Constitution and the Workmen's Compensation Act (Stats. 1917, chap. 586), and amendments thereto, enacted by the legislature in pursuance of said section of the Constitution. So much of said section as is applicable to our present purpose reads as follows: "The legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen's compensation includes . . . full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character. . . . " Under this grant of power the legislature created the Industrial Accident Commission and vested it with the exclusive jurisdiction over "All proceedings for the recovery of compensation, or concerning any right or liability arising out of or incidental thereto, or for the enforcement against the employer or an insurance carrier of any liability

for compensation imposed upon him by this act in favor of the injured employee, his dependents or any third person, . . . or for obtaining any order which by this act the Commission is authorized to make, or for the determination of any other matter, jurisdiction over which is vested by this act in the Commission. . . . '' (Sec. 55, Workmen's Compensation Act.)

This section further provides, " . . . and the commission is hereby vested with full power, authority and jurisdiction to try and finally determine all such matters . . . "

It is petitioner's contention that the commission is not invested with equitable powers, and that accordingly it has no jurisdiction over a proceeding to reform a policy of insurance on the ground of the mutual mistake of the parties, or for that matter, on any ground whatever. Petitioner takes the position that courts of equity, and they alone, have exclusive jurisdiction of such matters, and that in order to reform such policy of insurance it is necessary for the party seeking such reformation to invoke the powers of a court of equity, as no such power has been vested in the Industrial Accident Commission.

In construing the section of the Constitution above referred to, and the legislative enactment adopted in pursuance thereof, this court has held that in determining the liability of an insurance carrier for compensation to an injured employee the commission had the power to determine all questions of law and fact upon which the liability of the insurance carrier depended (*Employers' L. A. Corp.* v. *Industrial Acc. Com.,* 177 Cal. 771, 775 [171 Pac. 935]). In that case the court had under review an award of the Industrial Accident Commission, given in a proceeding in which the insurance carrier set up as a defense that there had been a breach on the part of the employer of certain warranties contained in the policy of insurance and that upon learning of such breach the carrier had canceled the policy. In that case it was argued that the issues involved in that defense were such as could be determined only by a court of law in an action upon the policy, and that the commission was without jurisdiction to pass upon them. This court disagreed with that contention and held in favor of the commission's jurisdiction. Its conclusion in that respect was stated as follows: ''If the commission may, in any case, make an award against one who

has agreed to stand in the employer's place and protect him against claims by his employees, it must have the power to determine all questions of law and fact upon which the liability of the alleged carrier depends. To hold that the mere denial of the binding force of a policy of insurance deprives the commission of jurisdiction would introduce endless and unnecessary complications and difficulties into the administration of the law.''

In the case of the *General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179, 190 [237 Pac. 33], the insurance carrier interposed as a defense to the application of an injured employee that the policy of insurance was procured by the fraud of the employer, and the question arose whether in determining the issues involving such defense, which were equitable rather than legal, the commission was vested with the power to hear and determine such issue. Again this court sustained the jurisdiction of the commission. The language of the court in that instance was as follows: ''There can be no doubt but that the commission is vested by constitutional and legislative power to hear and determine every issue raised by the parties to this controversy, including the validity of the policy, and the question of fraud alleged in its procurement, and that the parties are not required to invoke either a court of law or equity in the determination of said questions.''

This express holding to the effect that the commission has been invested with the power and authority to hear and determine equitable issues is controlling in the matter before us, and is determinative of the power of the commission in proceedings before it to reform policies of insurance, or other writing, so that the same will state the true intent of the parties thereto. Petitioner has cited the following authorities as holding that the Industrial Accident Commission has no such power: *Allied Mutuals Liability Ins. Co.* v. *Interstate Cork Co.*, 134 Misc. 504 [235 N. Y. Supp. 541, 543], *Kelley* v. *Tomahawk Motor Co.*, 206 Wis. 568 [240 N. W. 141, 143], and *Continental Casualty Co.* v. *Industrial Acc. Com.*, 61 Utah, 16 [210 Pac. 127].

In the first two of these cases it appears that the powers of the industrial board in one instance and the industrial accident commission in the other, were conferred by legislative enactment without proper constitutional warrant or authority, and it was held, in the words of the Supreme Court

of Wisconsin: "Any attempt by the legislature to confer such purely judicial powers upon the commission would no doubt meet with insurmountable constitutional objections." These two cases have no controlling influence in this jurisdiction, where the legislative enactment conferring judicial powers upon the commission is expressly authorized by the Constitution. In the case from the Supreme Court of Utah it was held that the industrial accident commission of that state "is in no sense a judicial body", but is an administrative body. It does not clearly appear from that decision nor from the two cases from that court cited in the opinion, the basis upon which that decision rests, but it is apparent that the decision of the Supreme Court of Utah is not in harmony with the decisions of this court, which hold that the commission in matters within its jurisdiction acts as a judicial body and exercises judicial functions and in legal effect is a court. (27 Cal. Jur. 449; *Carstens* v. *Pillsbury*, 172 Cal. 572, 576 [158 Pac. 218], *Pacific Coast Casualty Co.* v. *Pillsbury*, 171 Cal. 319, 322 [153 Pac. 24], and *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407, 411 [156 Pac. 491, Ann. Cas. 1917E, 390].)

The question of the power of the state industrial board of the state of New York, which corresponds to the Industrial Accident Commission of this state, to reform a policy of insurance on the ground of the mutual mistake of the parties was recently before the Court of Appeals of that state. The court reviewed the section of the Constitution and the act of the legislature of that state providing for the industrial board in that state, and also certain decisions of that court. It reached the conclusion that the industrial board had equitable jurisdiction to hear and determine the defense of the insurance carrier which involved the reformation of said policy of insurance. In reaching such conclusion the court said: "Where and how has the jurisdiction to consider equitable defenses been withheld from the board? It is difficult to put one's finger on any constitutional or statutory provision or judicial decision which thus limits its jurisdiction. The difference, once regarded as basic, between the method of trying legal defenses and equitable defenses, no longer exists. Independent suits are no longer necessary to establish equitable rights. The question was elaborately discussed by Cardozo, J., in *Susquehanna S. S. Co.* v. *A. O.*

*Andersen & Co.*, 239 N. Y. 285 [146 N. E. 381], and the conclusion was reached that equitable defenses are triable in the same way as defenses that are legal. The jurisdiction to hear and determine equitable defenses is incidental to the general jurisdiction of the board to enforce policies under the Workmen's Compensation Law. Without such jurisdiction the old rule is revived without reason.'' (*Royal Indemnity Co.* v. *Heller*, 256 N. Y. 322 [176 N. E. 410].)

There is slight, if any, material difference in principle between the Constitution and statute of New York and those of this state relating to the creation of an independent tribunal for the recovery of compensation by injured employees. We are satisfied that the prior decisions of this court, cited above, admit of but one conclusion in this matter and that is that the Industrial Accident Commission of this state has been invested with the power and authority to hear and determine equitable issues, including those arising in a controversy involving the reformation of a written instrument. We are confirmed in this conclusion by the decision of the Court of Appeals of the state of New York, where the precise question was squarely presented, and a decision rendered upholding the power and jurisdiction of such tribunal to hear and determine questions of that character. We are further in accord with the policy of the law which invests in one tribunal the power to dispose of the whole controversy involving the right of the injured employee to secure just compensation for the injury sustained by him. This policy is aptly expressed in the closing paragraph of the opinion of the court in *Royal Indemnity Co.* v. *Heller, supra*, as follows: ''Such matters should be disposed of summarily before one tribunal so that prompt adjustment of liability for industrial accidents may be obtained without unnecessary litigation and expense. Here we have an accident which happened more than three years ago with the question of liability still unsettled. Such delays are inconsistent with the purpose of the remedies provided by the Compensation Law.''

The award is affirmed.

Langdon, J., Preston, J., Waste, C. J., Thompson, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.