BERNARD V. PROVENZANO, DOING BUSINESS UNDER THE FICTITIOUS NAME OF O. K. PLUMBING & HEATING COMPANY, APPELLANT, v. JOE LONG, RESPONDENT.

No. 3473

July 24, 1947.                              183 P.2d 639.

*Morse & Graves,* of Las Vegas, for Appellant.

*Jones, Wiener & Jones,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, J.:

■ In a common law action for negligence tried to the court below without a jury, plaintiff Joe Long recovered a judgment against the defendant for $4,880. Defendant appeals from the judgment and from the order denying his motion for a new trial and relies mainly upon the contention, not made in the court below, but raised here for the first time, that the district court had no jurisdiction to try the action, for the alleged reason that the Nevada industrial commission had exclusive jurisdiction to try and determine the matter. As the question raised is a jurisdictional one, it may be thus raised for the first time on appeal. Pershing Quicksilver Co. v. Thiers, 62 Nev. 382, 383, 152 P.2d 432. Although other questions are raised in the appeal, the determination of this point will be largely determinative of the appeal. Indeed, appellant says in his reply brief: "This seems to be the pivotal element of the entire appeal." Although our conclusions will require a more detailed statement of the facts involved, we may note generally that plaintiff brought his common law action in the district court after the state industrial commission had announced that the defendant was not covered by state industrial insurance, for the reason that he was in default in the filing of his pay rolls and the payment of his premiums.

The determination of such question required not only a finding of the facts under conflicting evidence, but the determination of numerous questions of both law and equity in connection therewith. Could a filing of pay rolls and payment of premiums after the accident and after the commencement of the action operate retroactively so as to make the industrial insurance effective as of the date of the accident? Could such subsequent payment, made with the specific written provision, that

it should thus act retroactively, and the acceptance thereof under such terms by one of the employees of the commission estop the commission from questioning such result? Did the employee have the right to bind the commission and subject it to an estoppel by such acceptance? Can the industrial commission in any event, as a governmental agency, be subjected to an estoppal? Did the commission as a matter of law have a right to declare the defendant's account defaulted without formal demand for compliance? Was a tender of a refund on the part of the commission of the premiums thus paid by the defendant in an attempt to reinstate his account retroactively essential before such account could be in default? Was it a fraud upon the defendant for the commission to accept the said subsequent premium payment, through one of its employees, and then, through its auditor, to declare that such acceptance had no such effect? These and other questions all required determination, and it is insisted by appellant that under our industrial insurance act the determination was within the exclusive jurisdiction of the industrial insurance commission. The controversy arose out of the following situation:

Plaintiff, an employee of defendant, was struck by defendant's truck driven by another of defendant's employees, on premises owned and operated by the defendant, on September 13, 1945. Plaintiff had just quit work for the day, stepped out of the defendant's building and while still in front of the door, on the premises, waiting for his wife to call for him, the defendant's truck drove up, was unable to stop on account of defective brakes, and pinned the plaintiff against the building, breaking his leg and otherwise injuring him. The accident was reported to the industrial insurance commission, which concluded that the defendant was not covered.

On August 2, 1945, the defendant had filed its pay rolls

for the period ending June 30, 1945, and paid the premiums for same. Defendant's next pay rolls were submitted September 28, 1945, some fifteen days after the accident, and the next pay roll report was made and premium paid October 2, 1945, for the period ending August 29, 1945. The pay roll report and premium payment for September, 1945, the month in which the accident occurred, were submitted February 5, 1946, almost five months after the accident and seven days after the filing of the complaint in this action in the district court. It was accompanied by letter enclosing check for $864.53 in payment of the premiums in accordance with the pay rolls submitted and "with the express understanding that it be considered a retroactive payment covering the reports enclosed herewith and that any benefits which would have inured to us during the effective dates, if our reports had been sent in on time, will still be in effect." The check was cashed, and no tender of refund ever made. The insurance account was originally opened in February, 1945, at which time deposit had been made of insurance premium, on an estimated sixty-day pay roll. On the date of the accident, September 13, 1945, defendant had on deposit with the commission $413. This would have been sufficient to place him in good standing if he had reported his pay rolls in accordance with the requirements of the commission and in accordance with the state statute. As above noted, he had failed to do this.

The statute in question comprises secs. 2680 to 2731, N.C.L., as amended. Section 2702 provides, among other things, as follows:

"Every employer electing to be governed by the provisions of the act shall, on or before the twenty-fifth day of each month, furnish the Nevada industrial commission with a true and accurate pay roll showing the aggregate number of shifts worked during the preceding months, the total amount paid to employees for services performed during said month, and a segregation of employment in accordance with the requirements of the

commission, together with the premium due thereon * * * . Failure on the part of any such employer to comply with the foregoing provisions shall operate as a rejection of this act, effective at the expiration of the period covered by his estimate * * .* ."

On each form for the filing of the employer's pay roll was printed the following rule:

"Pay rolls must be submitted on or before the 25th of each month covering operations for the previous month. Failure on the part of employer to pay premiums as required by the Nevada Industrial Insurance statute acts as an automatic rejection."

One of the rules promulgated by the commission, under authority of sec. 2693, N.C.L., and sec. 2702, quoted supra, reads as follows:

"Failure to maintain an advance deposit, or to submit pay rolls, as above provided, acts as an automatic rejection of the act, and any credit remaining may be considered as earned premium for the unreported period. We send no further notice, and it is your duty to avoid a rejection of our act by following above instructions."

Such rule was printed on the monthly statements mailed by the commission to defendant.

A Mr. Newell, in the employ of the Nevada industrial commission, had accepted the late filings and payment (occurring after the accident) under the terms of the forwarding letter insisting upon the retroactive effect of the filing. Mr. Lee, auditor for the commission, subsequently rejected the theory that such retroactive effect could have been accomplished. Mr. Lee was examined and cross-examined, and also examined by the court, and the questions as to the various filings and premium payments by the defendant were asked and answered many times, the answers being at the best somewhat confusing and in several respects apparently conflicting. Honorable George E. Marshall, district judge who tried the case, held "that there is ample evidence in the record to sustain plaintiff's theory that, by failure to comply with the rules and regulations of the statutes of the

State of Nevada relating to Workmen's Compensation, the defendant had failed to comply with the terms and conditions of the Industrial Insurance Act and, therefore, by such action, had rejected the act at the time of the accident complained of by the plaintiff."

Honorable Frank McNamee, district judge who heard the defendant's motion for new trial, stated, in denying such motion:

"The Court has carefully read the transcript of the testimony of the witness Henry H. Lee as well as the documentary evidence in the file, which leads to but one conclusion, to wit, that the said defendant was not entitled to the benefits of the Nevada Industrial Insurance Act on the date of said injuries."

The foregoing will be sufficient for a consideration of the appellant's contention that the entire controversy, including the question as to whether or not defendant had industrial insurance coverage at the time of the accident, lay within the exclusive jurisdiction of the industrial insurance commission. In support of this contention, appellant relies almost entirely upon the case of Employers' Liability Assur. Corporation v. Matlock, 151 Kan. 293, 98 P.2d 456, 127 A.L.R. 461, Annotation 473, and the Kansas, New York, and California cases therein cited. In the Matlock case the Employers' Liability Assurance Corporation, Limited, commenced an action against the injured workman who was seeking compensation, the employer and the commission seeking to enjoin further proceedings upon the ground that the policy had been obtained by fraud and should be canceled. A very strong case of fraud was alleged, namely, that the employer had falsely stated that it had carried compensation insurance for five years, had never had any policy canceled, had only two minor accidents and that there were no actions or claims pending against them at the time. All of such statements were false. The court denied the injunction upon the ground that

under the Kansas industrial insurance act the legislature had intended that every feature in such a controversy should be heard and determined exclusively by the commission.

The California and New York cases relied upon by the court in the Matlock case find simple explanation. Both California and New York have special constitutional provisions granting such authority and authorizing such procedure, and in each case the industrial insurance act contains what amounts to a complete code of civil practice before the commission. For example, section 21 of article XX of the constitution of California reads in part as follows:

"§ 21. Workmen's Compensation. The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation, by appropriate legislation, and in that behalf to create and enforce a liability on the part of any or all persons to compensate any or all of their workmen for injury or disability, and their dependents for death incurred or sustained by the said workmen in the course of their employment, irrespective of the fault of any party. A complete system of workmen's compensation includes * * * full provision for adequate. insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all its aspects, including the establishment and management of a state compensation insurance fund; full provision for otherwise securing the payment of compensation; and full provision for vesting power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, to the end that the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without encumbrance of any character; all of which

matters are expressly declared to be the social public policy of this State, binding upon all departments of the State government.

"The Legislature is vested with plenary powers, to provide for the settlement of any disputes arising under such legislation by arbitration, or by an industrial accident commission, by the courts, or by either, any, or all of these agencies, either separately or in combination, and may fix and control the method and manner of trial of any such dispute, the rules of evidence and the manner of review of decisions rendered by the tribunal or tribunals designated by it; provided, that all decisions of any such tribunal shall be subject to review by the appellate courts of this State. The Legislature may combine in one statute all the provisions for a complete system of workmen's compensation, as herein defined. * * *."

Section 18 of article I of the New York constitution, though differently expressed, is to the same practical effect and provides that nothing contained in the constitution shall be construed to limit the power of the legislature to enact laws in such matters "or for the adjustment, determination and settlement, with or without trial by jury" of all such matters and to provide that such right and remedy "shall be exclusive of all other rights and remedies for injuries to employees or for death resulting from such injuries." McKinney's Consol. Laws of New York Annotated, Book 2, Constitution, p. 500. It should be noted in passing that so complete is the California workmen's compensation law, under the constitutional authority above noted, that it provides for the filing of the commission's findings with the clerk of the superior court whereupon "judgment shall be entered immediately by the clerk in conformity therewith." The certified copy of the findings and award and copy of the judgment constitute "the judgment-roll." Execution may be issued, execution may be stayed, satisfaction of judgment entered, etc., all precisely like any other

judgments. Appeals lie only to the supreme court or the district courts of appeal in which the scope of the review is extremely limited. Labor Code, sec. 5806 et seq. The California and New York cases relied upon by the Kansas court include Skoczlois v. Vinocour, 221 N.Y. 276, 116 N.E.1004; Royal Indemnity Co. v. Heller, 256 N.Y. 322, 176 N.E. 410; Continental Casualty Co. v. Gleasner Compressed Air Supply & Equipment Co., 239 App.Div. 487, 267 N.Y.S. 706; General Accident, Fire & Life Assur. Corp. v. Industrial Accident Commission, 196 Cal. 179, 237 P. 33; Employer's Liability Assurance Corp. v. Industrial Accident Commission, 177 Cal. 771, 171, P. 935; Bankers' Indemnity Ins. Co. v. Industrial Accident Commission, 4 Cal.2d 89, 47 P.2d 719.

The learned justice, in arriving at his conclusion, states that he is not unmindful of certain holdings to the contrary by the respective supreme courts of Utah, Wisconsin, Oklahoma, and Missouri referred to in the opinion, but no discussion is had of the constitutional provisions in New York and California undoubtedly supporting the decisions of those states. Peculiarly enough, however, the Kansas statute is hardly more comprehensive than our own, and the Kansas constitution contains provisions similar to our own concerning the vesting of judicial powers in the courts, and has not been amended by granting the commission any judicial powers. Yet the Kansas case clearly holds that all issues, including such issues as those described above as arising in the present case, must first be submitted to the commission as having exclusive jurisdiction thereof, and to the exclusion of the jurisdiction of courts having general cognizance of all controversies in law and in equity.

The matter is one of first impression in this state, and appellant insists that the Kansas doctrine should be followed. It becomes necessary to consider the other jurisdictions that have decided to the contrary.

In Michigan Mut. Liability Co. v. Baker et al., as Commissioners of Department of Labor and Industry, 295

Mich. 237, 294 N.W. 168, the insurance carrier sued to cancel a certificate of insurance on the ground of mistake. The trial court granted the relief prayed. The commission appealed, raising only two questions: (1) Is the jurisdiction to determine the validity of an insurer's certificate vested in the department of labor and industry, or in a court of equity? (2) Has plaintiff an adequate remedy without the intervention of a court of equity? The supreme court of Michigan decided that the proper place to determine the question of the cancellation of the insurer's certificate on the ground of fraud or mistake was in a court of equity, and referred to the "limited powers" of the commission. Granting that in the exercise of the right of the department to determine "all questions" arising under the act, it performed quasi judicial duties, it insisted that the commission was an administrative tribunal only, and not a court possessing general equitable and legal powers. Referring then to Employers' Liability Assur. Corporation v. Matlock, 151 Kan. 293, 98 P.2d 456, 127 A.L.R. 461; Matter of Kelley, 64 Ind.App. 594, 116 N.E. 306; Royal Indemnity Co. v. Heller, 256 N.Y. 322, 176 N.E. 410; Bankers' Indemnity Insurance Co. v. Industrial Accident Commission, 4 Cal.2d 89, 47 P.2d 719, the court says [295 Mich. 237, 294 N.W. 170]:

"In some jurisdictions, the tribunal administering the Workmen's Compensation Law may have complete power to adjudicate legal and equitable questions relating to insurance matters because of specific constitutional provision or different constitutional interpretation."

As we have seen, California and New York have "specific constitutional provision." The Matlock case was decided on a question of statutory construction, in the absence of constitutional authority, but apparently without considering the constitutional question. The same applies to the Indiana case which held that the provision of the Indiana statute, acts 1915, p. 412, sec. 66, that "all questions arising under this act * * * shall be

determined by the Board * * *" was broad enough to cover the question there involved, which was simply a question as to whether a physician rendering services under the particular circumstances of the case was entitled to have his claim approved against the insurance carrier.

Rejecting the cases mentioned, the supreme court of Michigan, in the Michigan Mut. Liability Company case, supra, says:

"In Michigan, questions historically of equitable cognizance must remain determinable in chancery. (Citing cases.) Accordingly, we have insisted that a court of equity is the only forum to adjudicate questions of fraud relating to the administration of the Workmen's Compensation Law. (Citing cases.) We think also that the question of mistake in the issuance of an insurer's certificate is to be determined by a court of equity and not by the department, and that the intervention of equity is necessary for adequate protection of the rights of an insurer."

The court refers then to one or more of the following cases:

In Kelley v. Howard, 233 Mo.App. 474, 123 S.W.2d 584, the compensation commission of Missouri had found in a proceeding pending before it that the insured employer had obtained the reinstatement of her coverage by misrepresentation, and that the purported reinstatement was void. On appeal the employers contended that the commission acted in excess of its powers when it assumed jurisdiction to determine the question of alleged fraud. The court agreed with this contention, holding that the commission was an administrative agency without judicial power in the constitutional sense and had no power authoritatively to expound any principal of law or equity.

In Kelley v. Minneapolis, St. P. & S. S. M. Ry. Co., 206 Wis. 568, 240 N.W. 141, 143, one Agnes Kelley had accepted a payment of $400 from the railroad company

and signed a complete release which she thought was a simple receipt. Later, while her claim for compensation for her husband's death was still pending before the industrial commission for an award by reason of the fact that her husband had been killed in the course of his employment by an insured truck company, she brought suit to cancel the release she had given the railroad. The lower court held that her complaint stated a cause of action and overruled a demurrer thereto. On appeal it was urged that the commission had full and complete authority to receive parol evidence to contradict the terms of the written release under the authority of the industrial insurance act, that the lower court had no jurisdiction, and that the demurrer should have been sustained. The court said:

"This action invokes a well-defined remedy given by courts of equity. No citation of authority is necessary to show that courts of equity have authority in proper cases to modify, reform, or cancel written instruments. On the other hand, the powers of the commission are derived exclusively from the statutes. Wisconsin Mutual Liability Co. v. Industrial Commission, 190 Wis. 598, 209 N.W. 697. No statute is cited by appellants, and we have been unable to find any which even pretends to confer authority on the commission to modify, reform, or cancel written instruments properly before it for consideration. Any attempt by the Legislature to confer such purely judicial powers upon the commission would no doubt meet with insurmountable constitutional objections. Klein v. Barry, 182 Wis. 255, 196 N.W. 457. While the Workmen's Compensation Act must at all times be liberally construed to the end that its beneficent purposes may be fully carried out, we find no sanction in the law for the contention herein made that the commission may exercise such purely judicial powers."

Klein v. Barry, 182 Wis. 255, 196 N.W. 457, cited by the court in the last excerpt, is even stronger. There a statute was attacked because it gave the railroad commission of Wisconsin the right to declare certain stock

issued under circumstances not complying with the statute voidable, and thereafter in its discretion to restore the parties to the stock transaction to their former position or to place them in the position they would have been in had the law been complied with or had the representations made been true, and in general to make such award as might be just and equitable in the premises. The court said: "If this clause does not and was not intended to confer upon the Railroad Commission the powers of a court of equity, then it is difficult to imagine language that would." 182 Wis. 255, 196 N.W. at page 461. The court then reversed the order of the lower court which had denied an injunction restraining the railroad commission from proceeding to adjudicate the matter under the powers claimed under the act.

In Farmers Gin Co. v. Jones, 146 Okl. 79, 293 P. 527, the court held the state industrial commission to be without jurisdiction to determine contract rights existing between the employer and the insurance company and that the rights of the employer against the insurance company, if the latter had attempted to cancel its policy in violation of its contract, must be adjudicated in the civil courts. That case was overruled by the later case of Tri-State Casualty Ins. Co. v. Bowen, 189 Okl. 97, 113 P.2d 981, 985, and it was held that the commission had the authority to determine the "primary proposition" whether or not the relationship of employer and insurance carrier was in existence on the date of the injury. The court further stated that when the industrial commission determined whether or not the relationship of insurance carrier was in existence on the date of the injury "it was exercising one of the powers necessary to the discharge of its statutory duty in determining the liability of such insurance carrier to the claimant herein." The court further held that the commission not only had such jurisdiction, but that it was exclusive. It thus joined the Kansas school of thought.

In Lumbermen's Reciprocal Association v. Henderson,

Tex.Com.App., 15 S.W.2d 565, 566, the court upheld the statement of the district court that "averments of fraud in procurement (of a release of an industrial award) are essentially of judicial cognizance; and because the Industrial Accident Board is not a court (Article V, Constitution; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S.W. 556), its action is in nowise a condition precedent to institution of judicial proceedings to secure appropriate relief."

In Red Rover Copper Co. v. Industrial Commission, 58 Ariz. 203, 118 P.2d 1102, 1106, 137 A.L.R. 740, Arizona adopted the Kansas theory, but this was justifiably done pursuant to a constitutional amendment, Const. Ariz. art. 18, secs. 4, 5, 7, so that the court, stating that it was supported by New York, California, and Kansas, and was rejecting Utah, Wisconsin, Oklahoma, and Texas, was able to say: "Where and how has the jurisdiction to consider equitable defenses been withheld from the board? It is difficult to put one's finger on any constitutional or statutory provision * * * which thus limits its jurisdiction." Quite the opposite question is posed by this appeal. Where and how has the Nevada industrial commission been clothed with judicial powers? If a construction of the Nevada industrial insurance act furnishes the answer to this question, we should then look in vain in our constitution for its authority. However, no such construction is necessary or warranted.

In Continental Casualty Co. v. Industrial Commission of Utah, 61 Utah 16, 210 P. 127, 128, the court, reversing an award made by the commission, said, "if the policy was obtained by fraud or if a mistake was made in fixing the date when the same should become effective the Industrial Commission is not the tribunal to grant the plaintiff relief." While granting the fact that many of the acts of the commission are quasi judicial, the court still insists that it is in no sense a judicial body but is distinctively an administrative body.

Appellant relies on Pershing Quicksilver Co. v. Thiers,

62 Nev. 382, 152 P.2d 432, but we find nothing in this case to support appellant's theory that the determination of coverage was under the circumstances within the exclusive jurisdiction of the commission. Rather are we inclined to adhere to the traditional policy of this court in jealously protecting the constitutional vesting of judicial powers in the courts.

■ The water law of this state was saved from a violation of the constitutional vesting in the district courts of original jurisdiction in all cases in equity and in all cases at law involving the title or right of possession to real property by holding that the order of determination to be filed by the State Engineer in the office of the clerk of the district court "operates as and has the force and effect of a complaint ' * * *.'" Vineyard Land & Stock Company v. District Court, 42 Nev. 1, 171 P. 166, 172. The state bar act was held not to violate the constitution because the findings and recommendations of the local administrative board and the board of governors was recommendatory only, and because the court had to make its own independent review of the facts and its own findings and decree. In re Scott, 53 Nev. 24, 292 P. 291. It is conceded that quasi judicial powers must necessarily be exercised by the Nevada state industrial commission in virtually every award that it makes. This is true of many administrative boards and of many administrative officers, and is so patent that neither the listing of illustrations nor the citation of authorities is required. Appellant's brief, however, fairly bristles with questions of law and equity whose determination, he insists, were and are within the exclusive jurisdiction of the board. Waiver, forfeiture, and estoppel are discussed at length, and the commission's conclusion that the insurance was in default despite the acceptance of the "retroactive" filings is declared to violate "all the rules of equity." The case at bar is said to require a determination of estoppel or "equitable liability." Pages are devoted to an exposition

of the theory and application of estoppel and waiver. Inducements and misrepresentations are discussed and results characterized as "unconscionable." No stronger case can be made than the appellant's own claims, for the holding that it was not the legislative intent to place within the bosom of the industrial commission these functions, which our organic law has vested in the courts. The commission having denied coverage by reason of the defendant's failure to file his pay rolls and pay his premiums as required by the workmen's compensation act and the rules promulgated thereunder by the state industrial commission, plaintiff was entitled to commence his common law action in the district court.

Several other contentions are made by appellant. It is claimed that the court's finding that the accident arose out of and in the course of plaintiff's employment is not justified. It is our opinion that this was amply justified under the evidence. The same applies to the contention as to plaintiff's period of lack of employment after the accident. Appellant claims that the court was in error in making a finding of defendant's negligence, for the reason that such finding was immaterial and irrelevant to the basis upon which recovery was permitted by the lower court. This contention is without merit. It is urged that the court erred in its conclusion that the evidence established a rejection of the terms of the Nevada industrial insurance act by the defendant. We are inclined to agree with the statements of both the learned judge who tried the case and the learned judge who denied the motion for new trial to the effect that the defendant's default in the filing of his pay rolls and the payment of his premiums resulted in a statutory rejection of the act. In any event, as above noted, the evidence on this point, if not actually conflicting, is to say the least confusing, and we are not disposed to question the conclusions reached in the district court under the circumstances. Appellant claims that the evidence was insufficient to establish the finding of damage in the

sum of $4,880. This, however, was within the province of the district court, and there was ample evidence to sustain it. Error is claimed in the court's action in overruling the demurrer to the amended complaint and in overruling the defendant's objections to the plaintiff's proposed findings and in denying the motion for nonsuit. These contentions are all disposed of in our conclusion that the plaintiff properly filed his complaint in the district court.

Appellant earnestly contends that "the court erred in denying the motion of defendant made under sec. 64–65 of the Civil Practice Act praying that the Industrial Commission be brought in as a party defendant (§ 8565, N.C.L.)." If the presence of the Nevada state industrial commission was necessary in this action before a "complete determination of the controversy" between the plaintiff and the defendant could be had, a point which we do not find it necessary to decide, the situation as shown by the record in this case forecloses appellant from a reversal on this ground. Neither the minutes of the court, nor the pleadings, nor anything in the bill of exceptions discloses that the defendant ever moved the court for leave to join the commission as a party to the proceeding, nor did he demur to the complaint upon the ground of nonjoinder. At the conclusion of the trial counsel for the respective parties announced to the court that they rested. The court thereupon stated that plaintiff had proved his case by a preponderance of the evidence and ordered that judgment be entered in favor of the plaintiff and against the defendant. The court, in the course of its remarks, indicated the possibility of the right of the defendant to recover from the industrial insurance commission, and it is apparently with reference to such remark that counsel for defendant, after the court's announcement of judgment, stated:

"I wonder if we could be heard on that point, so we could have the figures and a couple of authorities to submit to your Honor. I think it would save further

needless litigation. * * * (I should like to submit authorities) as to the liability of the Industrial Commission in this action.

"By the Court: I couldn't make a judgment against them because they are not a party here.

"By Mr. Morse: I realize that, your Honor, but we have certain suggestions that we wish to make to your Honor supported by authorities, that we think will terminate the whole thing.

"By Mr. Jones: We object to arguing on that point. It is not within the issues of this case."

■ The court then set 3 p. m. of the following day for argument. This was apparently had in chambers, and what transpired does not appear in the record. Formal findings, conclusions and judgment were subsequently entered. We see no merit in appellant's contention that the court erred in denying some motion with respect to the parties that does not appear in the bill of exceptions.

The motion for new trial was restricted to the ground "that the court erred in holding that the defendant was not covered by the Nevada industrial insurance act at the time of the injury," and what we have said above disposes of this contention. We have considered all other points raised, and find no merit in them. Some of the authorities we have found unnecessary to discuss.

The judgment and the order denying defendant's motion for a new trial are hereby affirmed, with costs.

EATHER, C. J., concurs.

HORSEY, J., did not participate in the foregoing case.